Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/30/2022 09:08 AM CDT

North Star Mutual Insurance Company, appellee and
cross-appellant, v. Jerry Miller and David Miller,
doing business as Old Mill Bulk Foods,
appellants and cross-appellees.

___ N.W.2d ___

Filed July 8, 2022.    No. S-21-505.

1. **Summary Judgment.** Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
2. **Insurance: Contracts: Appeal and Error.** The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court.
3. **Appeal and Error.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.
4. **Insurance: Contracts: Intent.** An insurance policy is a contract and is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made.
5. **Insurance: Contracts: Words and Phrases.** An insurance policy is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.
6. **Insurance: Contracts.** A court will not read an ambiguity into policy language which is plain and unambiguous in order to construe it against the insurer.
7. ____: ____. When interpreting the plain meaning of the terms of an insurance policy, the natural and obvious meaning of the provisions in a policy is to be adopted in preference to a fanciful, curious, or hidden meaning.

8. **Rules of the Supreme Court: Appeal and Error.** Depending on the particulars of each case, failure to comply with the mandates of Neb. Ct. R. App. P. § 2-109(D) (rev. 2021) may result in an appellate court waiving the error, proceeding on a plain error review only, or declining to conduct any review at all.

9. \_\_\_\_: \_\_\_\_. A cross-appeal must be properly designated, pursuant to Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2021), if affirmative relief is to be obtained.

10. \_\_\_\_: \_\_\_\_. A cross-appeal is properly designated by noting it on the cover of the appellee brief and setting it forth in a separate division of the brief.

11. **Attorney Fees.** Attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.

12. **Attorney Fees: Insurance.** Neb. Rev. Stat. § 44-359 (Reissue 2021) is a fee-shifting statute which permits a successful litigant to recover attorney fees as a part of the judgment in certain actions against insurance companies.

Appeal from the District Court for Cherry County: Mark D. Kozisek, Judge. Affirmed in part, vacated in part, and in part reversed and remanded with directions.

Todd R. McWha and Jonathan Peiffer, of Waite & McWha Law Firm, for appellants.

Jonathan M. Brown, of Walentine O'Toole, L.L.P., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## INTRODUCTION

Jerry Miller and David Miller, doing business as Old Mill Bulk Foods (Old Mill), operated a deli/grocery store in a building it rented in Valentine, Nebraska, which was the covered premises. On July 2, 2018, a fire destroyed the

covered premises, and thereafter, Old Mill elected to renovate another building in which to relocate its business. Old Mill had an insurance policy through North Star Mutual Insurance Company (North Star) and sought $159,878.53, in addition to other reimbursements, under the policy's "Extra Expense" provision. North Star denied coverage for the extra expenses and filed a declaratory judgment action to determine the parties' rights and obligations under the policy. The district court granted summary judgment, denying the extra expenses, and Old Mill appealed. We affirm in part, vacate in part, and in part reverse and remand with directions.

## BACKGROUND

North Star issued the insurance policy to Old Mill, effective for a 1-year period beginning on November 21, 2017, and ending on November 21, 2018 (hereafter the Policy).

After the fire destroyed the deli/grocery store, which was the covered premises, Old Mill elected not to repair or rebuild it. As a result, Old Mill searched for a replacement property for lease in order to resume operations. Being unable to find anything suitable, Old Mill informed North Star that Miller Land Enterprises, LLC, owned by Jerry, David, and Mary Miller, intended to purchase a defunct movie theater in Valentine and lease it to Old Mill. Miller Land Enterprises purchased the replacement property on April 10, 2019, and subsequently entered into a rental agreement with Old Mill to operate the grocery store at the new location. The replacement property required substantial modification and renovation to make it suitable as a grocery store, including work to level the floors, remove walls and relocate walls, install flooring, install lighting and outlets, and install sinks.

During renovations, Old Mill submitted claims for loss to North Star under the terms of the Policy. The Policy provides for certain areas of coverage, including "Business Personal Property," "Business Income," and "Extra Expense." Pursuant to the terms of the Policy, North Star paid Old Mill $89,050

for business personal property coverage and $199,212 for business income coverage.

Old Mill also sought $159,878.53 it spent in converting the replacement property into a deli/grocery store under the "Extra Expense" coverage. The claimed expenses included $38,600 for electrical improvements to the replacement premises, $53,167.50 for other necessary improvements to the replacement premises, $36,884.15 for materials used in the improvements of the replacement premises, $19,500 for plumbing improvements to the replacement premises, and $4,600 for a walk-in cooler.

The "Extra Expense" provision of the Policy states, in pertinent part:

> A. Coverage
>
> . . . .
>
> 5. Additional Coverages
>
> . . . .
>
> g. Extra Expense
>
> (1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .
>
> . . . .
>
> (2) Extra Expense means expense incurred:
>
> (a) To avoid or minimize the suspension of business and to continue "operations":
>
> (i) At the described premises; or
>
> (ii) At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.
>
> (b) To minimize the suspension of business if you cannot continue "operations".
>
> (c) To:
>
> (i) Repair or replace any property; or

(ii) Research, replace or restore the lost information on damaged "valuable papers and records";
to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage f. Business Income.

. . . .

(4) . . . This Additional Coverage is not subject to the Limits of Insurance of Section I-Property.

North Star denied Old Mill's claim, maintaining that expenses incurred to convert the replacement property into a deli/grocery store are not covered under the "Extra Expense" provision of the Policy, and subsequently filed its complaint for declaratory judgment, arguing the same. In response, Old Mill filed an answer and counterclaim, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and bad faith. Eventually, both parties moved for summary judgment.

The district court acknowledged two out-of-state cases cited by the parties: *Thompson v. Threshermen's Mut. Ins. Co.*[1] and *Midwest Regional Allergy v. Cincinnati Ins. Co.*[2] North Star argued the former controlled the present case, while Old Mill argued the latter case controlled. The court rejected both arguments.

The court found the policy provisions were ambiguous, determining that there are two reasonable, but conflicting interpretations of the "Extra Expense" provision in the Policy:

• [I]t provides coverage for the costs associated with starting the business at a replacement location, including structural modifications and the mechanical, electrical and plumbing installation/modifications to the newly acquired premises at the replacement location, or

---

[1] *Thompson v. Threshermen's Mut. Ins. Co.*, 172 Wis. 2d 275, 493 N.W.2d 734 (Wis. App. 1992).

[2] *Midwest Regional Allergy v. Cincinnati Ins. Co.*, 795 F.3d 853 (8th Cir. 2015).

• [I]t limits coverage to the costs for replacement and relocation of personal business property necessary to carry on business at the new location.

In light of its finding of ambiguity, the trial court proceeded to define the phrase "to equip" as meaning to "provide someone or something with objects that are needed for a particular activity or purpose." And, further, determined that the word "equip" refers to objects, such as refrigerators, stoves, and coolers, and not "walls, floors and bathrooms." In doing so, the court found that the "[E]xtra [E]xpense" coverage was limited to expenses incurred to avoid or minimize the suspension of business at the replacement property, including relocation expenses and costs to equip and operate at the new location. In other words, the coverage encompassed the continuance of operations or business activities at the replacement premises, but did not provide coverage for the acquisition of the replacement location or improvements and/or modifications made at the replacement location.

The court concluded that at the time the Policy was issued, the parties did not expect or intend that North Star would insure Old Mill against the loss of the location where it conducted its business, and further, the parties did not agree to provide whatever was necessary for Old Mill to commence operations at a new location. However, because North Star agreed to pay the costs to relocate and equip the replacement premises, the court found that North Star was contractually obligated to pay for the walk-in cooler.

Accordingly, the district court granted North Star's complaint for declaratory judgment to the extent that the court found that the Policy does not require North Star to provide coverage to Old Mill for electrical improvements, structural work associated with conversion of the replacement premises, materials associated with the improvements, and plumbing improvements. The district court also granted Old Mill's counterclaim to the extent that the court entered judgment

against North Star in the amount of $4,600 for the walk-in cooler.

Old Mill requested attorney fees in the amount of $33,797.99. The court determined that such request was not reasonable because North Star had a reasonable basis for denying Old Mill's claim, and instead, the court found that a reasonable attorney fee was $5,000 and awarded such to Old Mill.

## ASSIGNMENTS OF ERROR

Old Mill assigns, restated, that the district court erred in (1) finding that the "'Extra Expense'" provision of the Policy does not cover improvements made to convert and equip the replacement building and (2) awarding only $5,000 of the requested $33,797.99 in attorney fees.

On cross-appeal, North Star assigns, restated, that the district court erred in (1) determining the Policy provisions to be ambiguous, (2) determining that the walk-in cooler was covered under the "'Extra Expense'" provision of the Policy, and (3) awarding attorney fees to Old Mill.

## STANDARD OF REVIEW

[1] Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[3]

[2] The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court.[4]

---

[3] *American Fam. Mut. Ins. Co. v. Hadley*, 264 Neb. 435, 648 N.W.2d 769 (2002).

[4] *Id*.

[3] Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[5]

## ANALYSIS

### The Policy

The parties have narrowly framed the central issue before this court as whether the claims Old Mill has asserted against North Star are covered under the "Extra Expense" provision of the Policy as expenses "to equip" the replacement property. This framing necessarily limits our analysis of the Policy to the issue of coverage as defined by the definition of "to equip" and omits the impact, if any, of policy exclusions and definitions which have not been argued on appeal. These omissions do not survive this narrow framing.

The district court found that the Policy, particularly the definition of "to equip," was ambiguous, but then proceeded to construe the Policy in favor of North Star. We agree with the district court that the Policy is ambiguous, but we disagree as to how the Policy should be construed.

[4] An insurance policy is a contract and is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made.[6] When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them.[7] In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the policy.

---

[5] *Humphrey v. Smith, ante* p. 632, 974 N.W.2d 293 (2022).

[6] See *American Fam. Mut. Ins. Co., supra* note 3.

[7] See *Mahoney v. Union Pacific RR. Emp. Hosp. Assn.*, 238 Neb. 531, 471 N.W.2d 438 (1991) (citing *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991)).

[5-7] Whether a policy is ambiguous is a matter of law for the court to determine.[8] An insurance policy is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.[9] However, we will not read an ambiguity into policy language which is plain and unambiguous in order to construe it against the insurer.[10] But, when interpreting the plain meaning of the terms of an insurance policy, we have repeatedly stated that the natural and obvious meaning of the provisions in a policy is to be adopted in preference to a fanciful, curious, or hidden meaning.[11]

Here, the Policy provides that North Star "will pay necessary Extra Expense [Old Mill] incur[s] during the 'period of restoration' that [it] would not have incurred if there had been no direct physical loss or damage to property at the described premises." The Policy defines the term "Extra Expense" to mean, in part, "expense incurred . . . [t]o avoid or minimize the suspension of business and to continue 'operations' [at] replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations." However, the Policy does not provide a definition of what it means "to equip."

Old Mill asserts that the meaning of "costs to equip" encompasses the costs of appliances, as well as the costs associated with preparing a structure to house those appliances, such as structural alterations. Despite North Star's argument to the contrary, we agree with Old Mill that the meaning of "costs to equip," as used in the Policy, is ambiguous inasmuch as "to equip" is susceptible of at least two reasonable constructions,

---

[8] See *id.*

[9] *Poulton v. State Farm Fire & Cas. Cos.*, 267 Neb. 569, 675 N.W.2d 665 (2004).

[10] See, *id.*; *American Fam. Mut. Ins. Co., supra* note 3.

[11] See *Katskee v. Blue Cross/Blue Shield*, 245 Neb. 808, 515 N.W.2d 645 (1994).

namely, whether or not the term encompasses substantial modifications made to a replacement location.

Insurance companies in drafting their policies formulate language which may either prevent or create ambiguity.[12] In such draftsmanship, precision provides certainty, while the absence of articulation accounts for ambiguity.[13] An ambiguous policy will be construed in favor of the insured so as to afford coverage.[14]

The Policy provides coverage for expenses incurred to avoid or minimize the suspension of business and to continue operations at the replacement location, including costs to equip and operate the replacement location. Examining this provision through the eyes of a reasonable person, the objective standard to determine the meaning of language in an insurance policy,[15] to "equip" has a rather ordinary meaning: "to make ready" or "to furnish for service or action by appropriate provisioning."[16]

North Star seems to take the position that the Policy does not provide coverage for remodeling expenses. However, nowhere does the Policy caution the insured that its definition of "to equip" differs from a "plain and ordinary" definition expressed in a standard dictionary, nor does it specifically exclude coverage for what may be considered structural modification or remodeling expenses. Thus, reading the Policy from the insured's point of view, we adopt the natural and obvious meaning of the provisions in a policy in preference to the hidden meaning suggested by North Star[17] and hold that

---

[12] *Denis v. Woodmen Acc. & Life Co.*, 214 Neb. 495, 334 N.W.2d 463 (1983).

[13] *Id.*

[14] See *id*. See, also, *American Fam. Mut. Ins. Co., supra* note 3.

[15] See *Decker v. Combined Ins. Co. of Am.*, 244 Neb. 281, 505 N.W.2d 719 (1993).

[16] "Equip," Merriam-Webster.com, http://www.merriam-webster.com/dictionary/equip (last visited July 2, 2022).

[17] See *Katskee, supra* note 11.

for purposes of the Policy, the word "equip" means to make ready or to furnish for service or action by appropriate provisioning and necessarily encompasses expenses incurred in modifying a replacement premises in order to continue operations, such as costs associated with electrical improvements, plumbing improvements, structural improvements, and materials used in those improvements.

This court is not alone in its determination. In *Midwest Regional Allergy*,[18] the Eighth Circuit Court of Appeals considered whether costs to repair and relocate an MRI machine were covered by an identical extra expense provision in an insurance policy. The insured in *Midwest Regional Allergy* operated a medical practice, which used specialized medical equipment, including an MRI machine, as part of its normal business operations. When a tornado destroyed the building, the insured elected to permanently relocate his medical practice to a different building which required substantial construction and modification in order to house the specialty medical equipment. In particular, it was necessary to reinforce the floors with concrete and remove and replace exterior brick, as well as install pipe, specialized heating and air conditioning equipment, and copper shielding in the walls, door, and ceiling. The insurer denied coverage for the expenses to repair and relocate the MRI equipment. The trial court found the claimed expenses were recoverable under the extra expense provision, and alternatively, the policy was ambiguous and therefore should be read as providing coverage.

On appeal, the Eighth Circuit concluded, in part, that it was reasonable to construe the policy to authorize coverage for claimed expenses, including the installation expenses associated with the MRI machine as costs to relocate the business to the replacement location.[19] The court further noted that although the nature of the insured's business and the extent of

------

[18] *Midwest Regional Allergy, supra* note 2.

[19] *Id.*

the damage necessitated substantial relocation expenses and significant costs to equip and operate the replacement property, this was not a factor in determining whether coverage existed under the extra expense provision of the policy.[20]

North Star directs us to the Wisconsin case of *Thompson*.[21] In *Thompson*, a case factually similar to the case presently before us, the Wisconsin Court of Appeals considered the meaning of the phrase "costs to equip and operate the replacement locations" as used in an identical extra expense provision in an insurance policy. The insureds in *Thompson* operated a grocery store out of a rented building. When a fire destroyed the building and the building's owners chose not to rebuild, the insureds built a new structure to house the grocery store. The insureds then sought additional coverage under their policy's extra expense provision for expenses incurred for an insurance premium, building permit, refrigeration equipment, furnace installation, plumbing, electrical work, gas hookup, payroll, refuse removal, and a new sign.

The appellate court determined that the extra expense provision was ambiguous and that such expenses were not covered under the policy's extra expense provision. The court then reasoned that despite being ambiguous, the insurance policies should be construed in accordance with what a reasonable person in the position of the insured would have understood them to mean. In doing so, the court noted that the extra expenses were for items previously owned by the insureds or for items that their landlord would have owned previous to the fire. The court explained that the former items were covered by the bulk of the policy and that neither party contemplated additional coverage for such items under the extra expense provision of the policy. The court further explained that the latter items were items for which the insured was paying rent and would have continued to pay rent. Thus, if it were to construe coverage

---

[20] *Id.*

[21] *Thompson, supra* note 1.

for such items under the extra expense provision, the insured would receive ownership of a new building as payoff from their insurance policy, which would lead to an absurd result.

Unlike the insured in *Thompson*, here, Old Mill did not construct an entirely new building. Although the nature of the replacement premises necessitated substantial relocation expenses and significant costs to equip and operate the replacement premises, this is not a factor in determining whether coverage exists under the "Extra Expense" provision of the Policy.[22] Consequently, we find *Thompson* to be unpersuasive under the circumstances.

Concluding that the Policy is ambiguous and therefore construing it in favor of Old Mill, we determine as a matter of law that the "Extra Expense" provision of the Policy provides coverage for costs associated with electrical improvements, plumbing improvements, structural improvements, and materials associated with those improvements that were done to the replacement premises. The district court thus erred in granting North Star's motion for summary judgment. With regard to this particular assignment of error, we reverse the decision of the district court and remand the cause with directions that the district court enter summary judgment in favor of Old Mill for the claimed extra expenses.

## Cross-Appeal

On cross-appeal, North Star argues the district court erred in finding the cost of the walk-in cooler was covered under the "Extra Expense" provision of the Policy. We disagree.

[8] As an initial matter, we note that generally, parties who wish to secure appellate review of their claims must abide by the rules of the Nebraska Supreme Court.[23] Any party who fails

---

[22] See *Midwest Regional Allergy, supra* note 2.

[23] *Great Northern Ins. Co. v. Transit Auth. of Omaha*, 308 Neb. 916, 958 N.W.2d 378 (2021), *disapproved on other grounds, Clark v. Sargent Irr. Dist., ante* p. 123, 971 N.W.2d 298 (2022).

to properly identify and present its claim does so at its own peril.[24] Depending on the particulars of each case, failure to comply with the mandates of Neb. Ct. R. App. P. § 2-109(D) (rev. 2021) may result in an appellate court waiving the error, proceeding on a plain error review only, or declining to conduct any review at all.[25]

[9,10] A cross-appeal must be properly designated, pursuant to § 2-109(D)(4), if affirmative relief is to be obtained.[26] A cross-appeal is properly designated by noting it on the cover of the appellee brief and setting it forth in a separate division of the brief.[27] This separate section "shall be headed 'Brief on Cross-Appeal' and shall be prepared in the same manner and under the same rules as the brief of appellant. See § 2-109(D)(1)"[28] Under § 2-109(D)(1)(b) through (i), the brief of appellant must include, in part, a (1) statement of the basis of jurisdiction, (2) statement of the case, (3) separate assignment of errors section, (4) propositions of law, (5) statement of facts, (6) summary of the argument, and (7) the argument.

Here, North Star's purported cross-appeal fails to fully abide with the rules for the brief of an appellant because its brief on cross-appeal fails to set forth a separate (1) statement of the basis of jurisdiction on cross-appeal, (2) statement of the case on cross-appeal, (3) assignments of error on cross-appeal, (4) propositions of law on cross-appeal, (5) statement of facts on cross-appeal, and (6) summary of the argument on cross-appeal. The decisive particulars governing how we treat failures to fully abide with the rules for the brief of an appellant depend on the nature of the noncompliance.[29] In this appeal, we elect to proceed to review for plain error.

---

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] § 2-109(D)(4). See *Great Northern Ins. Co., supra* note 23.

[28] § 2-109(D)(4).

[29] See § 2-109(D)(1).

Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[30] Here, because we have determined that the language of the "Extra Expense" provision is ambiguous and should accordingly be construed in favor of Old Mill, the district court did not commit plain error when it found that the cost associated with the walk-in cooler was a cost to equip and operate the replacement premises covered by the Policy. Thus, this assignment of error is without merit.

## Attorney Fees

[11,12] Based on its findings, the district court awarded Old Mill $5,000 of its requested $33,797.99 in attorney fees. Old Mill argues the court erred in failing to award it the full amount of its requested attorney fees. As a general rule, attorney fees and expenses may be recovered in a civil action only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.[31] Neb. Rev. Stat. § 44-359 (Reissue 2021) is a fee-shifting statute which permits a successful litigant to recover attorney fees as a part of the judgment in certain actions against insurance companies.[32] Section 44-359 provides in pertinent part:

> In all cases when the beneficiary or other person entitled thereto brings an action upon any type of insurance policy . . . the court, upon rendering judgment against such company, person, or association, shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his or her recovery, to be taxed as part of the costs.

---

[30] *Great Northern Ins. Co., supra* note 23.

[31] *Simon v. City of Omaha*, 267 Neb. 718, 677 N.W.2d 129 (2004).

[32] *Young v. Midwest Fam. Mut. Ins. Co.*, 276 Neb. 206, 753 N.W.2d 778 (2008).

We have further explained that where an insurer brings an action for declaratory judgment to have coverage determined and the insured prevails, the latter is entitled to attorney fees under § 44-359.[33]

In this case, the record supports an inference that the court denied the majority of Old Mill's attorney fees, not because of lack of evidence of value, but because it considered that Old Mill, as a matter of law, was not entitled to a full award of attorney fees under § 44-359. Because we have determined that the district court should have construed the Policy in favor of Old Mill and determined that Old Mill is entitled to all of its claimed expenses under the "Extra Expense" provision of the Policy, it is necessary to remand the cause back to the trial court to reconsider its award of attorney fees in light of our determination as to coverage.

To determine proper and reasonable attorney fees, it is necessary for the court to consider the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services.[34] There is no presumption of reasonableness placed on the amount of attorney fees offered by the party requesting fees.[35] The amount of an attorney fee awarded under § 44-359 is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion.[36]

---

[33] See *State Farm Mut. Auto. Ins. Co. v. Selders*, 189 Neb. 334, 202 N.W.2d 625 (1972).

[34] *Young, supra* note 32.

[35] *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997).

[36] *Muller v. Tri-State Ins. Co.*, 252 Neb. 1, 560 N.W.2d 130 (1997).

## CONCLUSION

For the reasons discussed herein, we reverse the district court's order granting summary judgment with respect to the claim for electrical improvements, structural work, materials, and plumbing improvements and remand the cause with directions to the district court to enter summary judgment in favor of Old Mill as to the claimed extra expenses. We affirm, however, the district court's order granting summary judgment with respect to the claim for the walk-in cooler. As to the issue of attorney fees, we vacate the court's order and remand the cause for reconsideration by the trial court.

Affirmed in part, vacated in part, and in part reversed and remanded with directions.