IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


BACKHAUS V. BACKHAUS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


SARAH A. BACKHAUS, APPELLANT,

V.

DAVID R. BACKHAUS, APPELLEE.


Filed October 29, 2024.    No. A-23-845.


Appeal from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Affirmed in part, and in part reversed and remanded with directions.

Lindsay Belmont, of Koenig | Dunne, P.C., L.L.O., for appellant.

Sarah M. Hart, Destiney S. Vinzant, and Allison Heineman, of Hightower Reff Law, L.L.C., for appellee.


RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

MOORE, Judge.

### INTRODUCTION

Sarah A. Backhaus appeals from the decree of dissolution entered by the district court for Douglas County, dissolving her marriage to David R. Backhaus. Sarah challenges the court's determination that funds held in a certain account at the time of the parties' separation were from an inheritance David received and were thus his nonmarital property. David attempts to cross-appeal. Because the district court erred in awarding David the account in question as his nonmarital property, we reverse and remand the division of property contained in the decree. We affirm in all other respects.

- 1 -

## STATEMENT OF FACTS

The parties were married on May 30, 2010, and they separated in February 2021. No children were born during the marriage. After the parties' separation, Sarah contacted an attorney about divorce proceedings, and the parties sold their house and split the proceeds. However, the parties did not continue to pursue or finalize the original divorce proceedings because Sarah suffered mental health issues that led to proceedings in the county court for Washington County and the appointment of coguardians and a conservator for her.

*County Court Proceedings.*

On December 2, 2021, the county court entered an order appointing Sarah's mother as her conservator and her mother and brother as her coguardians. In that order, the court found that Sarah lacked sufficient capacity to make or communicate responsible decisions on a daily basis concerning her person and property with regard to certain specified acts.

On April 7, 2022, the county court entered an order authorizing Sarah's mother and brother, as her coguardians and conservator, to "cooperate and participate in the dissolution proceedings of [Sarah] as they deem in the best interests of [Sarah]."

*Dissolution Complaint and District Court Proceedings.*

On April 11, 2022, Sarah filed a complaint in the district court, seeking dissolution of the parties' marriage; an equitable division of the marital estate; and awards of support and maintenance for a mentally ill spouse under Neb. Rev. Stat. § 42-362 (Reissue 2016), temporary and permanent alimony, and attorney fees and costs.

David filed an answer and counterclaim on June 28, 2022. In his counterclaim, David sought dissolution of the parties' marriage, an equitable division of the portion of the marital estate not already divided, and a nonhypothecation order restraining the parties from certain actions with respect to their property.

*Dissolution Trial.*

Trial was held before the district court on March 7 and 29, 2023. Sarah did not testify at trial, but the court heard testimony from Sarah's parents and brother, as well as from David, and it received various exhibits offered by the parties.

Sarah's mother testified about Sarah's mental health issues and her involvement in Sarah's treatment as one of Sarah's guardians, as well as her responsibilities as Sarah's conservator. Sarah has been diagnosed as "bipolar with psychotic features." She has also been diagnosed with "catatonia, anxiety, PTSD, and an eating disorder." At the time of trial, Sarah was taking various medications for her conditions, receiving electroconvulsive therapy, treating with multiple mental health professionals, and participating in a "peer support" program. Sarah has been residing with her father since September 2021. She had a part-time job at the time of trial and a goal of being able "to live on her own." Sarah also receives Social Security Disability "SSDI" benefits. As Sarah's conservator, her mother's duties include "[w]atch[ing] over her money" and making "reports to social security" and the State of Nebraska. She is familiar with Sarah's monthly living expenses and makes a monthly payment of $1,250 to Sarah's father for those expenses.

Sarah had a retail business that opened in 2017. Sarah's mother testified that the business "no longer exists." At the time of trial, Sarah's mother was in the process of formally closing the business. In testifying about Sarah's debts, her mother noted Sarah's loan through the Small Business Administration with a balance of $21,200 (the SBA loan).

At the time of their separation, the parties had several accounts at First National Bank. The district court received a bank statement for their joint savings account (FNBO x4020) showing a balance of $323,571.70 as of February 28, 2021. The court also received a bank statement for the parties' joint checking account (FNBO x9068), showing a "Total on Deposit" of $1,142.09 and a "Total on Loan" of $4,290.75 as of March 5, 2021. David testified that they used the joint checking account to pay their expenses. Sarah's mother testified that "[t]o [her] knowledge," FNBO x9068 no longer existed at the time of trial. She did assist in paying off the line of credit connected with that account. A third account (FNBO x9970) was the business checking account for Sarah's business. No bank statement for that account was received into evidence.

In his testimony, David confirmed that he received a "significant inheritance" during the marriage. David explained that when his mother was young, she and her sisters were in a band and "performed a lot, all over the world." When they made money, they sent it to their parents in Taiwan, who purchased property that increased in value "over the years." David testified that "they ended up selling that land, and all my family got a cut of that." David's mother had passed away by then, so her share was split between David and his brother.

At that point in his testimony, David was asked to refer to exhibit 40. His attorney inquired, "Can you tell me what that is," and David responded, "Yeah, that's the deposit of the money that we got from the land." David confirmed that it was a "joint bank account" with his and Sarah's names on it and that the balance in the account "went down quite a bit" after the initial deposit. David explained that funds in the account were used toward his college tuition, to purchase cars for both parties, and for the start-up and expansion of Sarah's business. When David's attorney asked him about "the balance" on a particular page of exhibit 40, the district court sustained Sarah's objection that the question "call[ed] for him to testify as to facts not in evidence." David then offered exhibit 40, which contains bank statements for FNBO x4020 from June 2015 through May 2021. However, the court sustained Sarah's hearsay objection and did not receive the exhibit. David then testified that he had "the rest of [his] inheritance" in his possession in "[his] own bank account." On cross-examination, David agreed that he had not brought any other documentation showing that he received an inheritance. David did not provide any further testimony about when the inheritance was received, the amount received, or the sums spent during the marriage. He did not testify about whether any other funds were deposited into the bank account in which his inheritance monies were placed.

The district court received exhibits with the parties' proposed distributions of the marital estate as aids to the court. In her proposed distribution chart, Sarah valued the marital estate at the time of the parties' separation in February 2021. In the investment and bank account section of her chart, Sarah included FNBO x4020, FNBO x9068, and FNBO x9970. As relevant to this appeal, Sarah proposed an equal distribution of FNBO x4020, giving each party $161,786 of the balance in that account. Her proposal also included the SBA loan, which she placed on her side of the distribution. David proposed valuing the marital estate as of April 2022 (month the complaint was filed). Presumably because of the later valuation date, the investment and bank account section of

his chart did not include any of the accounts identified in Sarah's chart. Rather, he included three Washington County Bank accounts on Sarah's side of the distribution, and a First National Bank account other than the ones identified above (FNBO x8583) on his side of the distribution. David testified that he was "pretty sure" the Washington County Bank accounts did not exist in February 2021; he was "not sure" whether FNB0 x8583 existed in February 2021. We also note that his chart did not include the SBA loan.

*Decree of Dissolution.*

On October 10, 2023, the district court entered a decree dissolving the parties' marriage. The court adopted the February 2021 valuation date for the marital estate proposed by Sarah, finding that that date was rationally related to the property comprising the marital estate, while the April 2022 valuation date proposed by David was not. The court's division of the marital estate included FNBO x9068, valued at $1,142 and awarded to David; FNBO x9970, valued at $1,405 and awarded to Sarah; and the SBA loan with a balance of $21,200, assigned to Sarah. The court addressed the parties' claims with respect to the balance in FNBO x4020 at the time of their separation, finding that David met his burden of establishing that the $323,571.70 balance in that account was from his inheritance and was therefore nonmarital. Accordingly, the funds in FNBO x4020 were not included in the division of the marital estate. The court ordered David to pay Sarah a property settlement payment of $14,410. The court found that Sarah was a mentally ill spouse as defined by § 42-362 and awarded her support and maintenance under that statute. The court noted that it had considered the statutory factors under Neb. Rev. Stat. § 42-365 (Reissue 2016), which also supported an award of alimony. The court ordered David to pay support and maintenance of $600 per month for a period of 48 months, commencing November 1 and ending upon Sarah's death or remarriage, the end of the 48 month period, or the date Sarah ceased to suffer from mental illness, whichever came first. The court also ordered David to maintain life insurance with benefits payable to Sarah as an irrevocable beneficiary in an amount sufficient to guarantee that "the alimony payments" outlined in the decree would be paid in the event David died prior to the specified term. Finally, the court ordered David to pay Sarah attorney fees of $10,000.

## ASSIGNMENTS OF ERROR

Sarah asserts that the district court abused its discretion in finding that the funds held in the FNBO x4020 account at the time of the parties' separation were from David's inheritance and were therefore nonmarital property.

David attempts to raise a cross-appeal, asserting that the district court abused its discretion in (1) determining that support and maintenance for a mentally ill spouse should be awarded, (2) requiring a life insurance policy to be obtained to guarantee the support and maintenance payments, (3) improperly including the SBA loan in the marital estate, (4) determining the date of valuation for the marital estate, and (5) awarding attorney fees to Sarah. He also takes issue with the error raised by Sarah and asserts that the court did not abuse its discretion in awarding him the remainder of his inheritance.

David failed to comply with the rules regarding cross-appeals. Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2023) provides, in relevant part:

> Where the brief of appellee also presents a cross-appeal, it shall be clearly noted on the cover of the brief. Within the appellee's brief, the cross-appeal shall be set forth in a separate section of the brief. This separate section shall be headed "Brief on Cross-Appeal" and shall be prepared in the same manner and under the same rules as the brief of appellant. See § 2-109(D)(1).

See, also, *Fentress v. Westin, Inc.*, 304 Neb. 619, 935 N.W.2d 911 (2019) (stating that cross-appeal section of appellate brief must set forth separate title page, table of contents, statement of case, assigned errors, propositions of law, and statement of facts). But see *Cornwell v. Cornwell*, 309 Neb. 156, 959 N.W.2d 243 (2021) (clarifying that § 2-109(D)(4) does not require separate title page, but, rather, requires cross-appeal to be noted on cover of brief and set forth in separate division of brief).

A cross-appeal must be properly designated, pursuant to § 2-109(D)(4), if affirmative relief is to be obtained. *North Star Mut. Ins. Co. v. Miller*, 311 Neb. 941, 977 N.W.2d 195 (2022). A cross-appeal is properly designated by noting it on the cover of the appellee brief and setting it forth in a separate division of the brief. *Id.* When a brief of an appellee fails to present a proper cross-appeal pursuant to § 2-109, an appellate court declines to consider its merits. *Id.* See, also, *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999) (explaining that appellate courts of this state have always refused to consider prayer for affirmative relief where such claim is raised in brief designated as that of appellee).

David did not clearly note his cross-appeal on the cover of his brief, designating himself only as an appellee and labeling his brief as "BRIEF OF APPELLEE." He did not set forth his attempted cross-appeal in a separate section of his brief as required by § 2-109(D)(4). And, he takes issue with the error asserted by Sarah. Because David did not properly designate his cross-appeal and seeks affirmative relief in a brief designated as that of an appellee, we do not consider his request for affirmative relief.

## STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees. *Seemann v. Seemann*, 316 Neb. 671, 6 N.W.3d 502 (2024). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

Sarah asserts that the district court abused its discretion in finding that the funds held in the FNBO x4020 account at the time of the parties' separation were from David's inheritance and were therefore nonmarital property.

Under § 42-365, the equitable division of property is a three-step process: (1) classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage; (2) value the marital assets and marital liabilities of the parties; (3) calculate and divide the net marital estate equitably between the parties. *Karas v. Karas*, 314 Neb. 857, 993 N.W.2d 473 (2023).

Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. *Id.* However, gifts and inheritances, even when received during the marriage, are presumed to be nonmarital. *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023). Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. *Seemann v. Seemann, supra*. Setting aside nonmarital property is simple if the spouse possesses the original asset, but can be problematic if the original asset no longer exists. *Knapp v. Knapp*, 32 Neb. App. 669, 4 N.W.3d 415 (2024). Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. *Seemann v. Seemann, supra*. If the separate property remains segregated or is traceable into its product, commingling does not occur. *Id.* The burden of proof to show that property should not be included in the marital estate in a dissolution decree rests with the party claiming that that property is nonmarital. *Karas v. Karas, supra*.

A nonmarital interest in property may be established by credible testimony. *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019). Triers of fact have the right to test the credibility of witnesses by their self-interest and to weigh it against the evidence, or the lack thereof. *Id.* The value of the nonmarital portion of an asset must be established by the greater weight of the evidence. *Id.* While documentary evidence may be more persuasive, it is not absolutely required. See *id.*

Sarah argues that FNBO x4020 should have been presumed to be a marital account and that the district court erroneously concluded David's inheritance was deposited into FNBO x4020 and that the balance in FNBO x4020 at the time of the parties' separation (as reflected in exhibit 10) was what remained of David's inheritance. In support of this assertion, Sarah notes that David's testimony does not reflect the amount of his inheritance. She notes that his testimony only reflects that the money he received was deposited in a jointly titled account during the marriage and that some of the funds were spent on certain marital expenses during the marriage. Sarah argues that because the parties held multiple joint accounts during the marriage, the evidence did not support a determination of which account held the funds testified to by David and that "it would be error for a district court to arbitrarily decide that the account with the most money was the one that held purported inherited funds without any evidence to support the same." Brief for appellant at 18. Sarah also argues that David's testimony of having received money from his family through the sale of land does not support a conclusion that the money was an inheritance received through testacy or intestacy.

As noted above, a nonmarital interest in property may be established by credible testimony and documentary evidence is not absolutely required. See *Burgardt v. Burgardt, supra.* David testified that he received an inheritance from his family during the marriage and that the money was deposited into one of the parties' joint bank accounts. He did not testify about the amount he received, beyond confirming that it was a "significant inheritance." David testified that he had the

remaining amount of the inheritance in his own separate bank account at the time of trial, but he did not testify as to the amount he thought was left when he transferred the money from the joint account to his separate bank account.

There was evidence in the record to establish the values of both joint accounts at the time of the parties' separation. The record does not show, however, whether David's inheritance was deposited into the parties' joint savings account FNBO x4020 or their joint checking account FNBO x9068. We note that there is nothing in the record to suggest that the parties had any other joint bank accounts prior to their separation. The third account held prior to the separation, FNBO x9970, was clearly identified as the checking account for Sarah's business. Concerning what happened to the inheritance money after it was deposited into one of the joint accounts, David testified that some of it was spent on his college tuition, cars for both parties, and for the start-up and expansion of Sarah's business. Exhibit 40, to which David referred during testimony about his inheritance, was not received into evidence and David did not testify on either direct or cross examination that the joint account into which his inheritance funds were deposited was comprised solely of the inheritance and not commingled with other marital funds. Other than confirming that the parties had a joint savings account, David did not specifically testify about how that account was used during the marriage. He testified that the parties used the joint checking account to pay their expenses.

In our de novo review, we cannot say that the greater weight of the evidence supports the district court's determination that the joint savings account FNBO x4020 should be excluded from the marital estate as David's nonmarital property. Although David's testimony may have been sufficient to prove that he received an inheritance during the marriage, unlike the husband in *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019), he failed to testify or produce any evidence about the details of the inheritance. The record does not indicate when the inheritance was received, how much the inheritance was, how much of the inheritance was spent during the marriage, or in which account the inheritance was deposited. Given that it was David's burden to prove the existence of nonmarital property, we conclude that the district court abused its discretion in setting aside the FNBO x4020 savings account as David's separate property. Accordingly, we reverse the division of property contained in the decree of dissolution and remand to the district court with directions to divide the marital estate after including the FNBO x4020 account in the marital estate.

CONCLUSION

Upon our de novo review, we find an abuse of discretion by the district court in determining that the funds held in the FNBO x4020 account at the time of the parties' separation were from David's inheritance and were therefore nonmarital property. We reverse the decree of dissolution, in part, and remand to the district court with instructions to divide the marital estate after including the FNBO x4020 account in the marital estate. Because David did not properly designate his brief as a cross-appeal, we do not address his assigned errors. Thus, we affirm the decree of dissolution in all other respects.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.