IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

GENERAL COLLECTION CO. v. LEAMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

GENERAL COLLECTION CO., APPELLEE,

V.

RALISA LEAMAN AND MICHAEL LEAMAN, APPELLANTS,
AND GOLDEN RULE INSURANCE COMPANY, APPELLEE.

Filed June 6, 2023.    No. A-22-406.

Appeal from the District Court for Hall County: PATRICK M. LEE, Judge, on appeal thereto from the County Court for Hall County: ALFRED E. COREY III, Judge. Judgment of District Court reversed and remanded for further proceedings.

Jared J. Krejci, of Smith, Johnson, Allen, Connick & Hansen, for appellants.

Kalissa A. Kleine, of Stinson Leonard Street, L.L.P. for appellee Golden Rule Insurance Company.

PIRTLE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

Ralisa Leaman and Michael Leaman appeal from an order of the district court for Hall County denying the Leamans' partial motion for summary judgment and granting Golden Rule Insurance Company's motion for summary judgment, finding there was no genuine issue of material fact as to coverage of the Leamans' claim under the insurance policy between the parties and that Golden Rule was entitled to judgment as a matter of law. We conclude that genuine issues of material fact preclude the entry of summary judgment and therefore reverse the trial court's order and remand the cause for further proceedings.

- 1 -

BACKGROUND

This action began as a collection case filed by General Collection Co. against the Leamans to collect a debt owed to Surgery Group of GI for medical services provided to Ralisa. Ralisa had a lump in her breast biopsied in March 2019, which led to a diagnosis of breast cancer. She subsequently underwent treatment for breast cancer.

The Leamans filed an answer and third-party complaint against Golden Rule in response to General Collection's complaint. The Leamans agreed with most of the allegations set forth in General Collection's complaint but alleged that Golden Rule was liable for the medical bills owed to Surgery Group of GI.

Regarding the third-party complaint against Golden Rule, the Leamans alleged the existence of a medical insurance policy between the Leamans and Golden Rule and that Golden Rule had improperly denied coverage and benefits for Ralisa's breast cancer treatments and expenses on the basis that her breast cancer was a preexisting condition excluded from coverage under the policy. The Leamans brought three causes of action against Golden Rule: contractual indemnity under the insurance contract, damages for the bad faith denial of benefits of the insurance contract, and declaratory judgment that all medical bills and expenses related to Ralisa's breast cancer treatments were covered by the insurance contract and Golden Rule.

Golden Rule denied the Leamans' allegations and alleged affirmative defenses, including that the insurance contract was "potentially void due to fraud" and "subject to recission for intentional omissions and/or misstatements made in the application."

As between General Collection and the Leamans, General Collection was granted summary judgment and obtained a judgment against the Leamans in the amount of $6,568.13.

Golden Rule subsequently filed a motion for summary judgment regarding the Leamans' third-party complaint, and the Leamans filed a cross-motion for partial summary judgment. A hearing on both motions followed. Golden Rule argued that coverage for Ralisa's breast cancer treatment did not exist under the policy because of a preexisting condition exclusion. The Leamans argued that exhibit 5 presented by and relied upon by Golden Rule was inadmissible and that Golden Rule waived reliance on its preexisting condition argument because it retained the Leamans' insurance premiums. The Leamans also argued that they were entitled to partial summary judgment on the issue of insurance coverage for Ralisa's breast cancer treatments and expenses. They further argued that if they were not entitled to partial summary judgment, disputed issues of fact prevented Golden Rule from being granted summary judgment.

Evidence at the summary judgment hearing established that the Leamans applied for a short-term medical insurance policy with Golden Rule on December 19, 2018. Coverage under that policy became effective on December 21 for injuries, and December 26 for illnesses.

The topic of preexisting conditions is addressed throughout the insurance application and agreement. First, in the "Statement of Understanding" section of the application it states: "No benefits will be paid for a health condition that exists prior to the date insurance takes effect."

Second, the policy provides two specific definitions for "preexisting condition" as follows:

"Preexisting condition" means a condition:

A. For which medical advice, diagnosis, care or treatment was recommended or received within the 24 months immediately preceding the date the covered person became insured under the policy; or

B. That had manifested itself in such a manner that would have caused an ordinarily prudent person to seek medical advice, diagnosis, care or treatment within the 12 months immediately preceding the date the covered person became insured under the policy.

Finally, the insurance policy has a specific section entitled "Preexisting Conditions" which states: "Preexisting conditions will not be covered under the policy."

The evidence also included "Claimant's Statement and Authorization" which Ralisa completed and submitted to Golden Rule in April 2019 seeking insurance coverage for her breast cancer treatment. The form asked Ralisa how the condition began and to set out all symptoms and describe the condition in detail, from the beginning. Ralisa's response stated: "Presence of abnormality in January 2019 which resulted in a biopsy." The form also states that by signing the form, Ralisa was authorizing the release of any medical records necessary "to Golden Rule Insurance Company, a UnitedHealthcare company, or any agent or independent administrator acting on its behalf" in order to process her claim.

In the Leamans' responses to requests for admissions they admitted that Ralisa was aware of a lump in her left breast prior to December 19, 2018, but denied that she had any knowledge that the lump was cancerous or a reason to be medically concerned prior to December 19, 2018. They also admitted that Ralisa discussed the lump in her left breast with Katie L. Peters, also known as Katie L. Peters Settje (Settje), APRN, NP-C, at an August 30, 2018, office visit at Family Practice of Grand Island.

In the Leamans' answers to interrogatories, they stated that Ralisa first noticed a lump in her left breast in October 2014, but at that time there was no indication the lump was cancerous or needed further medical attention. The answers also state that Settje was one of the medical providers made aware of the lump in October 2014, and that Ralisa was advised to have a mammogram and ultrasound, which she did.

Ralisa's medical records from Family Practice of Grand Island and Saint Francis Cancer Center were offered into evidence by Golden Rule as exhibit 5. The Leamans objected to the exhibit based on hearsay, authentication, and foundation. The objection was taken under advisement.

The first page of exhibit 5 contains a letter from Golden Rule to Family Practice of Grand Island asking for Ralisa's medical records in order to complete a review of Ralisa's insurance claim. The request states that authorization had been obtained from Ralisa and a copy was on file with Golden Rule. The remainder of exhibit 5 consists of Ralisa's medical records.

Ralisa's medical records contained in exhibit 5 show that she underwent a mammogram on April 3, 2018. The results were "negative," but found that "the breasts are extremely dense, which diminishes the sensitivity of mammography. There are no dominant masses or suspicious microcalcifications in either breast." The report from the mammogram also warned that "a

negative report should not delay a biopsy if a clinically suspicious mass is present. Some cancers are not identified by x-ray."

In addition, Ralisa's medical records show that she discussed the lump in her breast with Settje during an August 30, 2018, doctor visit for an unrelated issue. Specifically, the patient visit notes from that day state: "Has also had a small palpable lump, left inframammary area, present for years, has been imaged in the past, she wonders about having this excised. She does not feel it has changed." The notes from that visit further state:

> In regards to the inframammary area soft tissue mass, this has not changed for years she is wondering about having it excised, discussed with her that we could refer to a surgeon to have this evaluated, she will consider this and let us know [if] she would like to follow up with us.

Following the hearing, the court found exhibit 5 admissible based on the business records exception to the hearsay rule and overruled the Leamans' objections. The court overruled the Leamans' motion for partial summary judgment seeking an order that Golden Rule was required to provide insurance coverage finding that they failed to meet their burden. The court further found they failed to meet their burden that they are entitled to a judgment as a matter of law as to any of their causes of action against Golden Rule. The court granted Golden Rule's motion for summary judgment finding that the lump biopsied in March 2019 leading to a diagnosis of breast cancer was a preexisting condition not covered under the insurance policy issued by Golden Rule. It concluded that there was no genuine issue of material fact as to coverage of the Leamans' claim and Golden Rule was entitled to judgment as a matter of law.

## ASSIGNMENTS OF ERROR

The Leamans assign that the trial court erred in: (1) granting Golden Rule's motion for summary judgment and denying their motion for partial summary judgment, (2) admitting exhibit 5 into evidence over their hearsay, authentication, and lack of foundation objections, (3) failing to find that the policy provided coverage for Ralisa's breast cancer treatments based on the undisputed admissible evidence, (4) determining that the policy did not cover Ralisa's breast cancer treatments despite the doctrine of waiver due to Golden Rule's retention of the Leamans' premiums, (5) failing to interpret the plan to find coverage for Ralisa's breast cancer treatments, and (6) granting Golden Rule's motion for summary judgment based on an absence of undisputed facts and inferences, even if exhibit 5 was properly admitted and coverage was not created due to Golden Rule retaining the Leamans' premiums.

## STANDARD OF REVIEW

A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Noah's Ark Processors v. UniFirst Corp.*, 310 Neb. 896, 970 N.W.2d 72 (2022). In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Id.*

Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the

court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds. *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017).

An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Evans v. Freedom Healthcare*, 311 Neb. 336, 972 N.W.2d 75 (2022). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court. *North Star Mut. Ins. Co. v. Miller*, 311 Neb. 941, 977 N.W.2d 195 (2022).

## ANALYSIS

The Leamans have alleged six assignments of error which we have consolidated into three: the trial court erred in admitting exhibit 5 into evidence over their hearsay, authentication, and lack of foundation objections; the trial court erred in determining that the policy did not cover Ralisa's breast cancer treatments because Golden Rule had waived its preexisting condition argument by retaining the Leamans' premiums; and the trial court erred in granting Golden Rule's motion for summary judgment and denying their motion for partial summary judgment.

*Admission of Exhibit 5.*

The Leamans assign that the trial court erred in admitting exhibit 5, Ralisa's medical records, into evidence over their objections based on hearsay, insufficient authentication, and lack of foundation to establish any exception to the hearsay rule. Golden Rule argued exhibit 5 was admissible under the hearsay exception for statements made for medical treatment and/or the exception for business records.

The trial court relied on other admitted evidence in determining the admissibility of exhibit 5 and concluded that exhibit 5 was admissible pursuant to Neb. Rev. Stat. § 27-803(6)(b) (Cum. Supp. 2022), the business records exception to the hearsay rule. Specifically, the court relied on exhibit 1, an affidavit of Kimberly K. Moeller, a Legal Services Specialist for United HealthCare Services, Inc., Golden Rule's parent company. Moeller's affidavit states that she handles matters on behalf of Golden Rule. It further states that as part of Golden Rule's claims administration process Golden Rule requests that insureds complete a "Claimant's Statement and Authorization," and that these are kept and maintained by Golden Rule in the ordinary course of business and that she had reviewed Ralisa's statement and authorization. The affidavit also states that as part of its claims administration process, Golden Rule obtains, with the insured's authorization, records from healthcare providers or facilities having information as to the care, advice, treatment, diagnosis, or prognosis of any physical or mental condition of the insured. Moeller's affidavit identified exhibit 5 as "[a] true and correct copy of [Ralisa's] medical records from Family Practice of Grand Island PC regarding a visit on August 30, 2018, which is kept and maintained by Golden Rule in the ordinary course of business."

The Leamans first argue that Moeller's affidavit did not properly authenticate exhibit 5, as required by Neb. Rev. Stat. § 27-901 (Reissue 2016). They contend that Moeller was not a qualified person to authenticate documents created by Ralisa's medical providers and received by Golden Rule in the course of litigation.

Authentication or identification of evidence is a condition precedent to its admission and is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020), citing § 27-901(1). A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity. *AVG Partners I v. Genesis Health Clubs, supra*. Section 27-901(2) offers examples of authentication or identification conforming with the requirements of the rule, including, testimony that a matter is what it is claimed to be; and appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

Because authentication rulings are necessarily fact specific, a trial court has discretion to determine whether evidence has been properly authenticated. *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017). An appellate court reviews the trial court's ruling on authentication for abuse of discretion. *Id.*

The court found that Moeller's affidavit established that the contents of exhibit 5 were medical records. We agree that the affidavit satisfied the authentication requirement. It provided the court with sufficient evidence to show that exhibit 5, specifically the document from August 30, 2018, was what Golden Rule purported it to be – Ralisa's medical records. In addition, the appearance, contents, and substance of exhibit 5 taken in conjunction with circumstances clearly demonstrated that it contained Ralisa's medical records. Exhibit 5 appears to be medical records. The relevant circumstances demonstrating that the exhibit contains Ralisa's medical records include Moeller's statement that Golden Rule requests insureds to complete a "Claimant's Statement and Authorization" and Ralisa's signed statement and authorization was entered into evidence, in which she authorized the release of any medical records to Golden Rule, or any agent or independent administrator acting on its behalf, in order to process her claim. Further, exhibit 5 was not prepared for purposes of litigation, as the Leamans contend, but rather was information Golden Rule obtained in the ordinary course of its claims administration process. Thus, the trial court properly overruled the Leamans' objection to exhibit 5 based on lack of authentication.

The Leamans next argue that even if exhibit 5 was properly authenticated, it was hearsay and Golden Rule failed to establish the requisite foundation for its admission as a business record.

Under § 27-803(6), business records are an exception to the general exclusion of hearsay evidence. Subsection (6)(b), relevant here, allows the admission of records received or acquired in the regular course of business by an entity from another entity. Specifically, it provides that the following are not excluded by the hearsay rule:

> A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, other than opinions or diagnoses, that was *received or acquired in the regular course of business by an entity from another entity* and has been incorporated into and kept in the regular course of business of the receiving or acquiring entity; that the receiving or acquiring entity typically relies upon the accuracy of the contents of the memorandum, report, record, or data compilation; and that the circumstances otherwise indicate the

trustworthiness of the memorandum, report, record, or data compilation, as shown by the testimony of the custodian or other qualified witness.

(Emphasis supplied.)

The party seeking to admit a business record under the business records exception to the hearsay rule bears the burden of establishing foundation under a three-part test. First, the proponent must establish that the activity recorded is of a type that regularly occurs in the course of the business' day-to-day activities. Second, the proponent must establish that the record was made as part of a regular business practice at or near the time of the event recorded. Third, the proponent must authenticate the record by a custodian or other qualified witness. *State v. Walker*, 29 Neb. App. 292, 953 N.W.2d 65 (2020).

The court found that the medical records in exhibit 5 were: (1) received by Golden Rule in the regular course of its business; (2) were Ralisa's medical records from Family Practice of Grand Island that were kept in the normal course of its business; (3) that these medical records obtained by Golden Rule were incorporated into Golden Rule's business records in the ordinary course of its business; (4) that these were the types of records typically relied upon by Golden Rule for its accuracy regarding determination of claims; and (5) the records were factual in nature. It then determined that the records in exhibit 5 were admissible pursuant to the business records exception to the hearsay rule.

We agree that Moeller's affidavit satisfies the necessary foundation for admitting exhibit 5 as a business record acquired from another entity. Moeller stated that she is a Legal Services Specialist for United HealthCare Services and handles matters for Golden Rule, including reviewing records related to the Leamans' claim for insurance coverage. She stated that as part of Golden Rule's claims administration process, with the insured's authorization it "obtains records from health care providers or facilities having information as to the care, advice, treatment, diagnosis, or prognosis of any physical or mental condition of the insured." Moeller further identified exhibit 5 as "medical records from Family Practice of Grand Island PC regarding a visit on August 30, 2018," a copy of which is "kept and maintained by Golden Rule in the ordinary course of business." Moeller's affidavit established that Golden Rule relies on records from healthcare providers or facilities in its claims administration process. It obtains medical records with the insured's authorization and keeps those records in the regular course of its business and Ralisa's records from Family Practice of Grand Island were the type of records typically relied upon by Golden Rule in considering claims for insurance coverage. The admissibility of the medical records from Family Practice of Grand Island, specifically the visit on August 30, 2018, is further bolstered by the Leamans' own admission that Ralisa had an office visit with Settje on August 30, 2018, and discussed the lump in her left breast.

The Leamans also argue that exhibit 5 is inadmissible under the business records exception because it contains opinions and diagnosis. See § 27-803(6)(b). However, Golden Rule relies primarily on Settje's notes from Ralisa's visit on August 30, 2018, in which she recounts her and Ralisa's discussion about the lump in Ralisa's breast and the offer of a surgical referral to have the lump biopsied. Golden Rule does not rely on any medical opinions or diagnosis in exhibit 5 to support its position that coverage did not exist under the policy because of a preexisting condition exclusion. Accordingly, this argument fails.

We conclude that exhibit 5 was admissible under the business records exception and, therefore, the trial court did not err in overruling the Leamans' hearsay objection.

*Waiver of Preexisting Condition Argument.*

The Leamans also argue that the trial court erred in failing to find they were entitled to a determination that coverage applied as a matter of law because Golden Rule had waived its argument that there was no insurance coverage due to a preexisting condition by retaining the Leamans' insurance premiums.

The Leamans rely on *Dairyland Ins. Co. v. Kammerer*, 213 Neb. 108, 327 N.W.2d 618 (1982), in support of their position. In that case, following an automobile accident, the insurer sent the insured notice of cancellation of an automobile insurance policy based on a misrepresentation made by the insured at the time the policy was issued. The insurer returned the portion of the premium collected for the period after the date of cancellation. The trial court entered judgment in favor of the insurer, finding that the insured had fraudulently failed to disclose certain information to its insurer at the time the insurance policy was issued and therefore, the policy of insurance provided no coverage to the driver of the principal insured's car involved in the accident.

On appeal the Nebraska Supreme Court reversed the trial court, holding that the insurer was precluded from asserting that the insurance policy was void from the beginning where, instead of cancelling the policy from its inception and returning to insured the entire premium, it declared the policy cancelled nearly a month after the accident, kept the premium earned to date of cancellation, and returned only that portion of premium equal to amount collected for period after date of cancellation. The Supreme Court stated:

> When learning of the alleged fraud, [insurer] had two choices. Either it could determine that, because of the alleged fraudulent statements made to it, it wished to cancel the policy from its inception and return to [insured] the entire premium, on the theory that the policy never came into existence, or it could waive the alleged fraud, keep the premium earned to date of cancellation, and accept responsibility under the policy. If [insurer] elected to rescind the policy from its inception, it must place [insured] back in the same position [insured] was in before the policy was issued, including returning to her all of the premium. But [insurer] chose not to do so. Both by its notice of cancellation and by its retention of a portion of the premium, [insurer] elected to recognize the existence of the policy from the date of its issuance on March 5, 1980, until the date of its declared cancellation on April 22, 1980. Having made that choice, [insurer] acknowledged that the policy was in effect on the date of the accident, March 27, 1980, and it therefore became liable under the policy. [Insurer] could not, on the one hand, recognize the existence of the policy and retain a portion of the premium and, on the other hand, deny the coverage afforded by the policy because of alleged fraudulent misrepresentations.

*Dairyland Ins. Co. v. Kammerer*, 213 Neb. at 110-11, 327 N.W.2d at 620.

The Leamans argue that based on *Dairyland Ins. Co.*, Golden Rule cannot deny responsibility under the policy. The Leamans point out that Golden Rule denied coverage for Ralisa's claims in May 2019 and since that date, it has not refunded any portion of the premiums the Leamans had paid. They contend, therefore, that Golden Rule has waived its argument that

coverage is barred by the preexisting condition provisions and is bound to provide coverage for the Leamans' claims.

Golden Rule argues that unlike the facts in *Dairyland Ins. Co.*, it did not affirmatively void or rescind the policy, nor has it taken the position that the policy was void from inception. Rather, Golden Rule claims that in accordance with the terms of the policy, it has maintained that the policy was "voidable and subject to rescission," and preserved the option to rescind the policy due to misstatements by the Leamans in their application, but it opted not to rescind or void the policy. Therefore, it was not required to return the premiums. Likewise, Golden Rule argues that by retaining the premiums, it did not accept responsibility under the policy and waive its preexisting condition argument.

We agree with Golden Rule that it did not void or rescind the policy and was not required to return any premiums. Golden Rule did not notify the Leamans that the policy was cancelled and has not argued or presented evidence that the policy was void. Rather, Golden Rule has denied the Leamans' specific claim for breast cancer related treatment on the ground that the claim is excluded as a preexisting condition under the terms of the policy. The policy itself remained in effect and other claims could have been made against the policy. Accordingly, Golden Rule did not waive its preexisting condition argument by failing to return the premiums paid by the Leamans, and therefore, the Leamans were not entitled to a determination that coverage applied as a matter of law. This assignment of error fails.

*Summary Judgment.*

The Leamans next assign that the trial court erred in granting summary judgment in favor of Golden Rule and denying their motion for partial summary judgment. Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts, and that the moving party is entitled to judgment as a matter of law. *North Star Mut. Ins. Co. v. Miller*, 311 Neb. 941, 977 N.W.2d 195 (2022). At the summary judgment stage, the trial court determines whether the parties are disputing a material issue of fact. It does not resolve the factual issues. *Williamson v. Bellevue Med. Ctr.*, 304 Neb. 312, 934 N.W.2d 186 (2019). Where reasonable minds could draw different conclusions from the facts presented, there is a triable issue of material fact. *Id.* Summary judgment is an extreme remedy and should not be used to deprive a litigant of a formal trial if there is a genuine issue of material fact. *Wynne v. Menard, Inc.*, 299 Neb. 710, 910 N.W.2d 96 (2018).

The Leamans argue that even with the admission of exhibit 5 into evidence, Golden Rule is not entitled to summary judgment because there are genuine issues of material fact as to whether the preexisting condition exclusion applies here. We agree.

The policy defines a "preexisting condition," in part as "a condition: A. For which medical advice, diagnosis, care or treatment was recommended or received within the 24 months immediately preceding the date the covered person became insured under the policy." In the Leamans' responses to requests for admission, they admitted that Ralisa discussed the lump in her left breast with Settje on August 30, 2018, which was within the 24 months preceding the policy becoming effective.

Settje's notes from Ralisa's visit on August 30, 2018, state: "[Ralisa] [h]as also had a small palpable lump, left inframammary area, present for years, has been imaged in the past, she wonders about having this excised. She does not feel it has changed." The notes further state that Ralisa was "wondering about having [the lump] excised, discussed with her that we could refer to a surgeon to have this evaluated, she will consider this and let us know [if] she would like to follow up with us."

Based on Settje's notes, Ralisa is the one who inquired about the possibility of having the lump removed. Settje told her if she wanted to have the lump evaluated, she would refer her to a surgeon if she decided to have it removed. It seems clear that Ralisa did not receive a medical diagnosis or medical care from Settje on August 30, 2018. However, it is uncertain whether the conversation Ralisa had with Settje could be considered medical "advice" or a recommendation for medical "treatment" within the policy definition of a preexisting condition. We conclude Golden Rule failed to demonstrate that, as a matter of law, Settje provided medical advice or recommended treatment during the August 30 office visit. Rather, a genuine issue of material fact exists with respect to whether Settje's discussion with Ralisa about the lump in her breast was medical advice or recommended medical treatment. The issue is a question of fact that should be decided by a jury at trial, not by the court on a motion for summary judgment.

Further, even if Settje's conversation about the lump was medical advice or recommended treatment, there is also a question of fact as to whether the advice or recommended treatment was *for* breast cancer or *for* the lump in her breast.

Both state and federal courts have construed preexisting condition exclusions in insurance contracts differently. It does not appear that Nebraska has specifically addressed the issue. Several courts in other jurisdictions have held that where a policy defines a "preexisting condition" as a condition "for which" treatment or care was given before the effective date, the policy is ambiguous with respect to whether a "preexisting condition" includes a condition treated, but not yet diagnosed, before the effective date. See, *LoCoco v. Medical Sav. Ins. Co.*, 530 F.3d 442, 447 (6th Cir. 2008), citing *Lawson ex rel. Lawson v. Fortis Ins. Co.*, 301 F.3d 159, 162-67 (3d Cir. 2002); *Pitcher v. Principal Mut. Life Ins. Co.*, 93 F.3d 407, 411-17 (7th Cir. 1996); *Hughes v. Boston Mut. Life Ins. Co.*, 26 F.3d 264, 269-70 (1st Cir. 1994); *Ross v. Western Fidelity Ins. Co.*, 881 F.2d 142, 144 (5th Cir. 1989). This is because the word "for" can be read as connoting intent or purpose regarding the condition, such that *treatment* cannot be given "for" a specific condition unless the nature of the condition is known. *LoCoco v. Medical Sav. Ins. Co.*, 530 F.3d at 447.

In dealing with clauses referring to conditions "for which" treatment was provided, these same courts have concluded that the ultimate condition must have been suspected with a reasonable degree of likelihood in order to be considered "preexisting." In other words, treatment for a condition requires some awareness on the part of the physician or insured that treatment was being given for the condition itself. See *Hughes v. Boston Mut. Life Ins. Co., supra*.

In *Lawson ex rel. Lawson v. Fortis Ins. Co., supra*, the issue was whether receiving treatment for the symptoms of an unsuspected or misdiagnosed condition prior to the effective date of coverage made the condition a preexisting one under the terms of the insurance policy. In other words, the court was asked to determine whether it was possible to receive treatment "for" a condition without knowing what the condition was. Two days prior to the effective date of the policy, the insured went to the emergency room for treatment of what was initially diagnosed as a

respiratory tract infection, but which was discovered to be leukemia one week later, after the effective date of the policy. The insurer denied coverage of medical expenses related to the leukemia on the ground that it was a preexisting condition for which she had received treatment prior to the effective date of the policy. The Third Circuit affirmed the trial court's granting of summary judgment in favor of the insured. The court concluded the insured received treatment "for" what were initially diagnosed as symptoms of a respiratory tract infection; therefore, the treatment she received prior to the effective date of the policy was not "for" leukemia. It further held that for the purposes of what constitutes a preexisting condition, a suspected condition without a confirmatory diagnosis is different from a misdiagnosis or an unsuspected condition manifesting non-specific symptoms:

> When a patient seeks advice for a sickness with a specific concern in mind (e.g., a thyroid lump, or a breast lump) or when a physician recommends treatment with a specific concern in mind (e.g., a "likely" case of multiple sclerosis), it can be argued that an intent to seek or provide treatment or advice "for" a particular disease has been manifested. . . . Here, there is no evidence that the possibility that Elena's condition was actually leukemia ever entered the minds of Elena's parents or Dr. Parikh. Therefore, it would not make sense to say that Dr. Parikh offered medical advice or treatment for Elena's leukemia.

*Lawson ex rel. Lawson v. Fortis Ins. Co.,* 301 F.3d at 166 (citations omitted).

Similarly, in *Pitcher v. Principal Mut. Life Ins. Co.*, 93 F.3d 407 (7th Cir. 1996), the court held that the insured's routine physical examination and mammogram prior to effective date of the policy did not constitute treatment or service for breast cancer. Prior to the policy's effective date, the insured was being monitored for a longstanding fibrocystic breast condition. It was not until after the coverage began that she had a biopsy, which revealed breast cancer. The Seventh Circuit found that treatment for her breast cancer did not commence until after the biopsy procedure had conclusively identified a cancerous growth in her left breast; until that time, all concerned assumed that they were dealing with the longstanding fibrocystic breast condition, manifesting itself in the form of cysts, masses, and formations of fibrous tissue in both breasts. When lumps were detected at the time of her examination, both claimant and her doctor were of the belief that the lumps were the result of her fibrocystic breast condition and not cancer. Accordingly, the insured's breast cancer was not a preexisting condition excluded from coverage under the policy. See, also, *Ross v. Western Fidelity Ins. Co.*, 881 F.2d 142 (5th Cir. 1989) (there is at least reasonable argument that, under preexisting condition exclusion, treatment for specific condition cannot be received unless specific condition is known); *Van Volkenburg v. Continental Cas. Ins. Co.*, 971 F. Supp. 117, 122 (W.D.N.Y. 1997) (finding reasonable plaintiff's argument that to obtain advice or treatment regarding medical "condition," one must first have some awareness that "condition" exists). See, also, *Ermenc v. American Family Mut. Ins. Co.*, 221 Wis. 2d 478, 585 N.W.2d 679 (Wis. App. 1998) (holding that where claimant's cancer was not evident as condition before coverage period began and where symptoms before diagnosis were non-specific, coverage should not be excluded under preexisting condition clause). All these courts have reasoned that it is not logical to permit non-specific symptoms, which could be caused by a number of different sicknesses, to be used later as a retroactive trigger for exclusion as a preexisting condition. See *Lawson ex rel. Lawson v. Fortis Ins. Co.*, 301 F.3d 159, 162-67 (3d Cir. 2002)*.*

Other courts have interpreted preexisting condition provisions to not require a diagnosis of the condition. These courts have held that it is possible to receive treatment "for" a condition without knowing what the condition is. The reasoning underlying these decisions is that the preexisting condition language is clear and unambiguous that treatment for a condition does not require accurate diagnosis of the condition. See *Lawson ex rel. Lawson v. Fortis Ins. Co., supra.* For example, in *Bullwinkel v. New England Mut. Life Ins. Co.*, 18 F.3d 429 (7th Cir. 1994), the court held that discovery of a breast lump before the defendant's insurance coverage began triggered the preexisting condition exclusion although the lump was not definitively diagnosed as cancer until after coverage began. Before the claimant's insurance coverage began, she visited her doctor because she had detected a lump in her breast. After performing an ultrasound, her doctor became concerned about the possibility of cancer and ordered removal and biopsy of the lump, which occurred after the effective date of the policy, telling her "Let's be safe and take it out." The biopsy revealed the presence of cancer.

The parties agreed that the breast lump was a condition which was diagnosed and treated before the effective date of the policy. Both sides therefore, essentially conceded that the post-policy treatment of the lump was not covered under the policy. The issue then was whether the cancer treatments which took place after the lump was removed were covered. The Seventh Circuit reasoned that

> even though [the claimant] did not know the lump was cancerous in July [before the effective date of her insurance policy], her visit with the doctor in that month concerning the lump actually concerned cancer. It follows that [the claimant] was "seen" and "treated" and incurred medical expenses for her cancer in July.

*Id.* at 432. Therefore, the court concluded that any post-policy treatment concerning the cancer was not covered.

Similarly, in *Kirk v. Provident Life & Acc. Ins. Co.*, 942 F.2d 504 (8th Cir. 1991), the claimant was treated for a number of symptoms, including pain in his right side, night sweats, an ache in his leg, a lesion on his knee, and swelling, which led his doctor to suspect congenital heart disease. But a blood culture which might have detected such a disease proved negative. Subsequently, the claimant obtained an insurance policy which contained a preexisting condition exclusion. The claimant began once again to display symptoms of congenital heart disease. This time, a heart specialist diagnosed the disease as bacterial endocarditis, a heart illness. The heart specialist, as well as a specialist in infectious diseases, both concluded that the disease had been present before insurance coverage commenced.

The Eighth Circuit determined that the claimant's insurance did not cover the heart condition because it predated the policy. The court was unpersuaded by the fact that the condition was not accurately diagnosed until after the policy became effective. See also *Marshall v. UNUM Life Ins. Co.*, 13 F.3d 282 (8th Cir. 1994) (court found preexisting condition where claimant was treated for muscle pain prior to effective date of insurance, which was later diagnosed as chronic fatigue syndrome).

All of the cases discussed above involve insurance policies with substantially similar preexisting condition language to that in the Golden Rule policy at issue in this case.

An insurance policy is a contract and is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made. *North Star Mut. Ins. Co. v. Miller,* 311 Neb. 941, 977 N.W.2d 195 (2022).

Whether a policy is ambiguous is a matter of law for the court to determine. *Id.* An insurance policy is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id.* However, we will not read an ambiguity into policy language which is plain and unambiguous in order to construe it against the insurer. *Id.*

In the instant case we find the "preexisting condition" clause in the policy to be ambiguous. There is a question as to whether the preexisting condition clause requires knowledge or reasonable suspicion of the underlying disease. If it does not, and if Ralisa received medical advice or recommended treatment, then there is no coverage. But if the clause is interpreted to require knowledge or reasonable suspicion of the underlying disease, and if Ralisa received medical advice or recommended treatment for the lump itself, then coverage exists. However, the interpretation of an ambiguous contract presents an issue of fact not appropriate for determination on summary judgment. *Bierman v. Benjamin*, 305 Neb. 860, 943 N.W.2d 269 (2020). When the terms of a contract are in dispute and the real intentions of the parties cannot be determined from the words used, the jury, and not the court, should determine the issue from all the facts and circumstances. *Crozier v. Brownell-Talbot School*, 25 Neb. App. 1, 901 N.W.2d 341 (2017).

The Leamans admit that they were first aware of the breast lump in October 2014 and that is when Settje was first made aware of the lump, but claim they had no knowledge that the lump was cancerous or had any reason to be concerned that it might be cancerous before the policy went into effect. Ralisa had been monitoring the lump for years with routine mammograms. She also had an ultrasound at some point prior to the policy taking effect. The most recent pre-policy mammogram took place in April 2018 and did not detect any cancer. Based on her past medical tests, a finder of fact could determine that there was no reason to suspect that the lump was anything to be concerned about. When she saw Settje on August 30, 2018, it was for a reason unrelated to the lump on her breast. At that visit, she talked with Settje about the lump, telling her it had not changed in years, but was thinking about having it removed anyway.

Following the April 2018 mammogram, Ralisa was also told that her breasts were extremely dense, which diminishes the sensitivity of mammography and that a negative report should not delay a biopsy if a suspicious mass is present as some cancers are not identified by x ray. Accordingly, a finder of fact could determine that Ralisa had reason to be concerned the lump could be cancerous despite the negative mammogram results.

Because there are genuine issues of material fact regarding the applicability of the preexisting condition clause to Ralissa's claim, summary judgment was improvidently granted in this case.

CONCLUSION

Based on the reasons set forth above, we conclude that the trial court erred in granting summary judgment in favor of Golden Rule. We therefore reverse the order of the trial court and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.